IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **NORTH AMERICAN** | ) |
| **COMMUNICATIONS, INC., et al,** | ) **CIVIL ACTION NO. 3:17-167** |
| | ) |
| **Plaintiffs,** | ) |
| | ) **JUDGE KIM R. GIBSON** |
| **v.** | ) |
| | ) |
| **ECLIPSE ACQUI INC.,** | ) |
| | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

### I.    Introduction

Pending before the Court are (1) a Motion to Dismiss under Rule 12(b)(3), which the Court also construes as a motion to transfer venue,[1] (2) a Motion to Dismiss under Rule 12(b)(6), and (3) a Motion to Strike under Rule 12(f)—all filed by Defendant Eclipse Acqui, Inc. ("Eclipse"). These motions have been fully briefed (*see* ECF Nos. 9, 10, 11) and are ripe for disposition.

For the reasons that follow, the Court will **deny** Eclipse's Motion to Dismiss under Rule 12(b)(3). However, the Court will **grant** Eclipse's motion to transfer this case to the Northern District of Georgia. Because the Court will transfer this case to the Northern District of Georgia, the Court will not rule on Eclipse's remaining motions.

---

[1] Eclipse's brief does not cite either of the venue transfer statutes. *See* 28 U.S.C. § 1404(a); 28 U.S.C. § 1406. However, Eclipse requests, as an alternative to dismissal, that this Court transfer venue. Accordingly, the Court construes Eclipse's Motion to Dismiss to include a motion to transfer venue.

## II.    Jurisdiction

The Court has subject-matter jurisdiction because the parties are diverse and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332.

## III.    Background

### A.    Factual Background[2]

North American Communications, Inc. ("NAC") entered into a Loan and Services Agreement (the "Loan Agreement") with AloStar Bank of Commerce ("AloStar") on May 29, 2015. (ECF No. 1 at ¶ 8.) Under the Loan Agreement, NAC paid a principal amount of $2,039,000.00 (the "Term Loan) to AloStar and, in return, AloStar issued NAC a revolving line of credit for $6,000,000.00 (the "Revolver Loan"). (*Id.* at ¶ 9). NAC and AloStar also entered into separate agreements to secure NAC's obligations to AloStar under the Loan Agreement: (1) a Pledge Agreement under which NAC's shareholders pledged their NAC stock to AloStar, and (2) a Membership Agreement under which NAC pledged to AloStar its membership interests in wholly-owned subsidiaries of NAC. (*Id.* at ¶¶ 14-15.)

The Loan Agreement's choice of law clause provides that Georgia law shall govern the contract. (ECF No. 1-2 at § 11.10.) The Loan Agreement's forum-selection clause provides for non-exclusive venue in the Northern District of Georgia, the Northern District of Alabama, and various state courts in Georgia and Alabama. (*See Id.* at § 11.11.)

---

[2] The facts contained in this section are derived from NAC's Complaint (ECF No. 1) unless otherwise indicated. The Court considers these facts as true for the sole purpose of deciding the pending motions.

NAC and AloStar executed a Forbearance Agreement on July 31, 2017. (*Id.* at ¶ 16.) The Forbearance Agreement required NAC to complete certain tasks by certain dates. (*Id.* at ¶ 18.) For instance, the Forbearance Agreement provided that if NAC failed to fully pay its outstanding balance owed under the Loan Agreement by August 18, 2017, NAC would be required to retain a financial management consultant by August 23, 2017.[3] (*Id.* at ¶ 20.) The Forbearance Agreement also required that NAC "execute[] a letter of intent with a third party that [would result in] the payments of all amounts due AloStar under the Loan [Agreement]." (*Id.* at ¶ 19.)

The letter of intent required that NAC "secure the agreement of two former owners of NAC under the terms of certain retirement agreements with such individuals, to release liability thereunder." (*Id.* at ¶ 22.) One of these individuals was Michael Herman, whose retirement agreement provided that any payments he was due from NAC were "subordinate to any bank debt and trade payables . . .". (*Id.* at ¶ 23.) However, Michael Herman refused to subordinate his retirement payments to AloStar. (*Id.*) Michael Herman's refusal prevented NAC from closing the Forbearance Agreement with AloStar. (*Id.* at ¶ 24.)

After Michael Herman's refusal, Robert Herman, the NAC's president, approached Manny Ortiz, a former business partner, and asked Ortiz whether would be amenable to structuring a transaction with NAC "similar to that which was set forth in the letter of intent." (*Id* at ¶ 25.) Ortiz agreed. On August 10, 2017, Eclipse, acting through Ortiz, proposed to purchase NAC's stock and pay off the debt that NAC owed AloStar under the Loan Agreement. (*Id.* at ¶

---

[3] Around the time NAC and AloStar executed the Forbearance Agreement, NAC owed AloStar approximately $1,155,000.00 on the Revolver Loan. (*Id.* at ¶ 11.)

26.) But NAC and its shareholders rejected Eclipse's proposal when they discovered that Eclipse and Ortiz were acting on behalf of Michael Herman, NAC's former owner. (*Id.* at ¶¶ 27-29.) Apparently, Michael Herman hoped to regain control of NAC by using Eclipse and Ortiz to purchase NAC's stock. (*Id.* at ¶ 28.)

Having been rebuffed by NAC's shareholders, Eclipse devised a surreptitious scheme to take control of NAC. (*Id.* at ¶ 30.) Eclipse executed an Assignment and Assumption Agreement with AloStar on August 14, 2017, which assigned AloStar's interests in NAC to Eclipse. (*Id.*) According to NAC, AloStar indicated that the amount transferred to AloStar by Eclipse totaled $1,209,877.27. (*Id.* at ¶ 39.)

AloStar represented to NAC that Eclipse had assumed all of AloStar's rights and obligations under the original Loan Agreement, "including the rights and obligations" under the Revolver Loan. (*Id.* at ¶ 33.) Accordingly, AloStar maintained that NAC could not access the Revolver Loan through AloStar, but instead had to obtain credit through Eclipse. (*Id.* at ¶ 34.) But Eclipse denied having acquired any rights and obligations under the Revolver Loan and refused to extend NAC the line of credit that NAC had previously received from AloStar. (*Id.* at ¶ 35.) Eclipse's refusal to extend NAC credit threatened its business and jeopardized NAC's ability to satisfy its outstanding contractual obligations. (*Id.* at ¶ 37.)

On August 18, 2017, NAC informed Eclipse that NAC intended to pay off the balance due on the Loan Agreement by the August 23, 2017 deadline to avoid NAC incurring the costs of hiring a financial consultant under the Forbearance Agreement. (*Id.* at ¶ 38.) On August 22 and

4

throughout the day on August 23, NAC "attempted to obtain payoff information and wire instructions from Eclipse" to enable NAC to fulfill its contractual obligations under the Loan Agreement. (*Id.* at ¶ 41.) But Eclipse "refused to provide either payoff information or wire instructions to NAC . . . ." (*Id.* at ¶ 42.) This prevented NAC from paying off the balance owed on the Loan Agreement. (*Id.*)

Later that day, Eclipse sent NAC a Default Notice for NAC's failure to repay the loan balance by the August 23, 2013 deadline. (*Id.* at ¶ 43.) In the Default Notice, Eclipse threatened to sell the interests in NAC that Eclipse had acquired through the Assignment and Assumption Agreement with AloStar. (*Id.* at ¶ 44.) Specifically, Eclipse threatened to convert the assets that NAC had used to secure its Revolver Loan with AloStar, including the interests in the Pledge Agreement (NAC shareholders' stock in NAC) and the Membership Agreement (NAC's membership interests in its wholly-owned subsidiaries). (*Id.* at ¶ 46.) Eclipse "induced and fabricated" NAC's purported default to perpetuate a scheme intended to extract payments from NAC that Eclipse was not entitled to and/or to force NAC to sell its stock to Eclipse. (*Id.* at ¶ 47.)

On August 25, 2017, after declaring default and informing NAC that it intended to sell the assets described in the Pledge Agreement and the Membership Agreement, Eclipse stated that NAC owed it $1,376,210.94 under the Loan Agreement. (*Id.* at ¶ 48.) Eclipse did not provide an accounting or documentation for this figure, which was over $165,000.00 more than what Eclipse had paid AloStar on August 15. (*Id.* at ¶ 50.) Eclipse also made NAC an offer: Eclipse would extinguish all of NAC's obligations under the Loan Agreement, return all NAC's collateral and

5

pledged interests, and satisfy all of Eclipse's assumed obligations under the Loan Agreement if NAC paid Eclipse the updated payoff amount that Eclipse had quoted to NAC.[4] (*Id.* at ¶ 52.)

NAC and Eclipse reduced these terms into a written agreement (the "New Agreement"). (*Id.* at ¶ 54.) NAC signed the New Agreement, but "only because there was an actual and imminent threat that Eclipse would either sell the [p]ledged [s]tock and the [p]ledged [m]embership [i]nterests, as [Eclipse] threatened to do in the Default Notice . . . ." (*Id.* at ¶ 55.) NAC transferred the updated payoff amount to Eclipse on August 29. (*Id.* at ¶ 58.) NAC would not have executed the New Agreement or transferred the updated payoff amount but for Eclipse's "extortionist" scheme. (*Id.* at ¶ 10.)

## B.    Procedural Background

NAC filed its Complaint before this Court on September 13, 2017. (*See* ECF No. 1.) NAC asserts four counts against Eclipse: (1) breach of contract (*id.* at 11-13); (2) breach of the implied covenant of good faith and fair dealing (*id.* at 13-15); (3) unjust enrichment (*id.* at 15); and (4) fraud (*id.* at 16-17). Eclipse filed its motion to dismiss on October 30, 2017. (*See* ECF No. 8.)

---

[4] Specifically, Eclipse promised to: (1) return the original stock certificates and membership interests that NAC pledged to AloStar to secure the Loan Agreement; (2) satisfy NAC's outstanding mortgage; (3) release various other interests and agreements; and (4) extinguish all outstanding financing statements under the Loan Agreement. (*Id.* at ¶ 53.)

## IV. The Court Will Deny Eclipse's Motion to Dismiss Under Rule 12(b)(3) Because Venue Is Proper in the Western District of Pennsylvania

Eclipse argues that venue is improper before this Court. According to Eclipse, the alleged breaches did not occur in Pennsylvania. (ECF No. 9 at 7-8.) Rather, Eclipse argues that the alleged breaches took place in California or New Jersey because all relevant conduct on Eclipse's part was undertaken by Eclipse employees in those states.[5] (*Id.* at 8.) In response, NAC argues that venue is proper in this judicial district because Eclipse's alleged breaches prevented NAC from taking certain actions in this judicial district; because Eclipse sent the Default Notice and August 25 notice listing the inflated payoff amount to this judicial district; and because NAC was harmed by Eclipse in this judicial district. (*See* ECF No. 11 at 8-10.)

"In federal court, venue questions are governed either by 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 878 (3d Cir. 1995). Section 1406 "applies where the original venue is improper and provides for either transfer or dismissal of the case."[6] *Id.* Section 1404(a) "provides for the transfer of a case where both the original and the requested venue are proper." *Id.* "The party moving for dismissal or transfer based upon improper venue bears the burden of proof." *Rabner v. Titelman*, No. 15-1313, 2016 WL 1613444, at *4 (W.D. Pa. Apr. 22, 2016) (citing *Myers v. Am. Dental Ass'n*, 695 F.2d 716, 724 (3d Cir. 1982) and *Cumberland Truck*

---

[5] The Court notes that Eclipse submitted an affidavit by Douglas Holthaus, Esq., counsel for Eclipse, in which Holthaus affirms that all transactions relating to NAC were performed by Eclipse representatives in California or New Jersey. (*See* ECF No. 9-1.)

[6] The Third Circuit has stated that "[t]ransfer in lieu of dismissal is generally appropriate to avoid penalizing plaintiffs by 'time-consuming and justice-defeating technicalities.'" *Bockman v. First Am. Marketing Corp.*, 459 F. App'x 157, 162 (3d. Cir 2012) (quoting *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 467 (1962)).

7

*Equip. Co. v. Detroit Diesel Corp.*, 401 F. Supp. 2d 415, 418 (E.D. Pa. 2005)); *Wozniak v. Johnston,* No. CIV.A. 09-238, 2009 WL 1307459, at *2 (W.D. Pa. May 8, 2009). "When considering a motion to dismiss for improper venue, the court must generally accept as true the allegations in the pleadings and must view the facts in the light most favorable to the nonmoving party." *Sinclair Cattle Co. v. Ward*, 80 F. Supp. 3d 553, 557–58 (M.D. Pa. 2015) (quoting *Heft v. AAI Corp.*, 355 F. Supp. 2d 757, 762 (M.D. Pa. 2005)); *Connell v. CIMC Intermodal Equip.*, No. 1:16-CV-714, 2016 WL 7034407, at *2 (M.D. Pa. Dec. 2, 2016).

Under 28 U.S.C. § 1391(b)(2), venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ." *Id.* "[I]n determining whether a substantial part of the events or omissions giving rise to a cause of action occurred in a specific jurisdiction" under § 1391(b)(2), "[t]he test . . . is not the defendant's contacts with a particular district, but rather the location of those events or omissions giving rise to the claim."[7] *Bockman*, 459 F. App'x at 161 (quoting *Cottman Transmission Systems, Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994)) (internal quotation marks omitted). "[I]n assessing whether events or omissions giving rise to the claims are substantial, it is necessary to look at the nature of the dispute." *Prominent GmbH v. Prominent Sys., Inc.*, No. 2:16-CV-01609, 2017 WL 1316362, at *18 (W.D. Pa. Apr. 10, 2017) (quoting *Cottman*, 36 F.3d at 295); *see Lorven Techs., Inc. v. Insight Techs., Inc.*, No. CV167397FLWDEA, 2017 WL 2670971, at *3 (D.N.J. June 21, 2017).

---

[7] The Third Circuit has explained that "the venue provision 'favors the defendant . . . by requiring that the events or omissions supporting a claim be substantial'" because "[s]ubstantiality is intended to preserve the element of fairness so that a defendant is not haled into a remote district having no real relationship to the dispute.'" *Bockman*, 459 F. App'x at 161 (quoting *Martino*, 36 F.3d at 295).

In deciding a motion to dismiss for improper venue under Federal Rule of Civil Procedure 12(b)(3), the Court must "accept as true all of the allegations in the complaint, unless those allegations are contradicted by the defendant['s] affidavits." *Bockman*, 459 F. App'x at 158 (internal citations omitted); *see Rabner*, 2016 WL 1613444, at *4 (articulating standard for deciding a motion to dismiss for improper venue). But "[e]ven if it examines facts outside the complaint to determine venue, the court . . . must draw all reasonable inferences and resolve all factual conflicts in the plaintiff's favor." *Manning v. Flannery*, No. CIV.A. 09-03190, 2010 WL 55295, at *4 (E.D. Pa. Jan. 6, 2010) (citing *ProModel Corp. v. Story*, No. CIV. 07-3735, 2007 WL 4124502 at * 1 (E.D. Pa. Nov. 19, 2007); *Lanard & Axilbund, LLC v. Wolf*, No. CIV.A. 14-0234, 2014 WL 4722702, at *2 (E.D. Pa. Sept. 23, 2014) (where "Defendants . . . have exercised their option to submit an affidavit in support of their motion [to dismiss for improper venue], and Plaintiff has responded in kind . . . [the Court is] bound to accept uncontradicted allegations in the complaint as true, and to resolve and construe disputed facts in favor of the Plaintiff.") (internal citations omitted). Eclipse submitted an affidavit in support of its motion to dismiss (*see* ECF No. 9-1) and the Court has considered it under the principles outlined above.

"'In determining proper venue for a contractual dispute, the primary factors to be considered are 'where the contract was to be negotiated or executed, where the contract was to be performed, and where the alleged breach occurred.'" *Wall v. Corona Capital, LLC*, 221 F. Supp. 3d 652, 657–58 (W.D. Pa. 2016) (quoting *Whipstock Nat. Gas Servs., LLC v. Trans Energy, Inc.*, No. 08–1084, 2008 WL 4287158 at *3 (W.D. Pa. Sept. 17, 2008) (internal citations omitted); *Ferratex, Inc.*

*v. U.S. Sewer & Drain, Inc.*, 121 F. Supp. 3d 432, 440 (D.N.J. 2015) (stating same factors); *Stalwart Capital, LLC v. Warren St. Partners, LLC*, No. CIV. 11-5249 JLL, 2012 WL 1533637, at *4 (D.N.J. Apr. 30, 2012) (same); *Leone v. Cataldo*, 574 F. Supp. 2d 471, 484 (E.D. Pa. 2008) (same).

The Court finds that venue is proper in the Western District of Pennsylvania. Eclipse took several actions in this district that relate to NAC's claims, including (1) sending emails to NAC representatives in this judicial district relating to Eclipse's acquisition of NAC's obligations from AloStar (ECF No. 1-4); (2) mailing the August 23 Default Notice to NAC (ECF No. 1-5); and (3) mailing the August 25 New Agreement to NAC (ECF No. 1-7). Furthermore, NAC's representatives appear to have been in this district during many if not all of the communications that Eclipse had with NAC in August 2017. Moreover, NAC relied on Eclipse's allegedly fraudulent representations in this judicial district. Finally, NAC appears to have transferred the payoff amount to Eclipse from this judicial district. Viewing the facts in the light most favorable to NAC, the Court finds that "a substantial part of the events or omissions giving rise to the claim occurred" in this judicial district. 28 U.S.C. § 1391(b)(2). Therefore, venue is proper.

The Court rejects Eclipse's argument that business communications with an entity are insufficient to establish venue. To the contrary, "[w]hen an entire business relationship is conducted via telephone or e-mail, as here, it cannot be said that a substantial part of the events occurred in one location or the other; rather, it is more appropriate to say that a substantial part of the events occurred in both locations simultaneously." *It's Intoxicating, Inc. v. Maritim Hotelgesellschaft mbH*, No. 11-CV-2379, 2013 WL 3973975, at *12 (M.D. Pa. July 31, 2013) (holding

10

that venue was proper in the Middle District of Pennsylvania when the parties' "entire relationship consisted of electronic communications or written responses" because the complaint "alleges that all calls, emails, and negotiations between the parties were conducted from a location within the Middle District" and because "Plaintiff also received partial payment and shipped its products from the Middle District."). Moreover, "[i]n the electronic age—where letters, faxes, and telephone calls are augmented by e-mails, instant messages, and tweets—it is increasingly likely that negotiation and execution of contracts take place in disparate locations," thus making venue proper in the location where a party received and transmitted communications. *Thrivest Legal Funding, LLC v. Gilberg*, No. CV 16-03931, 2017 WL 1208064, at *6 (E.D. Pa. Apr. 3, 2017) (holding that venue was proper in the Eastern District of Pennsylvania when defendant made telephone calls, sent a check, and sent emails and faxes to plaintiff company located in the Eastern District, despite the fact that defendant "never came to Pennsylvania") (quoting Wright & Miller § 3806); *see Nowicki v. United Timber Co.*, No. CIV. A. 99-257, 1999 WL 619648, at *1 (E.D. Pa. Aug. 12, 1999) (holding that venue existed in the Eastern District of Pennsylvania because plaintiff negotiated contract via telephone while in the Eastern District and signed contract while in the Eastern District, despite the fact that no face-to-face meetings occurred between plaintiff and defendant in the Eastern District).

Having determined that venue is proper before this Court, the Court will next address Eclipse's motion to transfer venue.

## V.     Motion to Transfer Venue

Eclipse next asks this Court to transfer venue to the United States District Court for the Southern District of California. Alternatively, Eclipse asks this Court to transfer the case to the Northern District of Georgia or the Northern District of Alabama pursuant to the Loan Agreement's forum selection clause. (*Id.* at 8-9.) The Court will address these motions in turn.

### A.     Legal Standard: Transfer of Venue

Even if venue is proper, the Court may still transfer the case in "the interest of justice . . . to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). When "ruling on a motion under § 1404(a), the court is free to consider 'all relevant factors,' and the Third Circuit directs district courts to a list of certain private and public interest factors."[8] *Lannett Co. v. Asherman*, No. CIV.A. 13-2006, 2014 WL 716699, at \*6 (E.D. Pa. Feb. 24, 2014) (quoting *Jumara*, 55 F.3d at 879 (citing 15 Wright, Miller & Cooper, *Federal Practice and Procedure*: § 3848 (2d ed. 1986))).

"The private factors include (1) the plaintiff's forum preference; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience as indicated by their relative physical and financial condition; (5) the convenience of the witnesses; and (6) the location of the books and records." *Crayola, LLC v. Buckley*, 179 F. Supp. 3d 473, 480 (E.D. Pa. 2016) (citing *Jumara*, 55 F.3d at 879).

---

[8] "'The above list of factors is merely a guide, and not all the factors may be relevant or determinative in each case.'" *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, No. CIV. A. 09-290, 2009 WL 3055300, at \*2 (W.D. Pa. Sept. 21, 2009) (quoting *LG Elec., Inc. v. First Intern. Computer, Inc.*, 138 F.Supp.2d 574, 587 (D.N.J. 2001)).

12

"The public factors include (1) the enforceability of the judgment; (2) practical considerations that could make trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases."[9] *Crayola*, 179 F. Supp. 3d at 480 (citing *Jumara*, 55 F.3d at 879-90).

## B. This Court Will Deny Eclipse's Motion to Transfer the Case to the Southern District of California

The Court finds that Eclipse has failed to satisfy its burden to establish that transferring the case to the Southern District of California would further the interest of justice.

### 1. Private Interest Factors

The Court finds that the only private factor that supports transfer is "the defendant's preference."[10] Similarly, the only private factor that clearly weighs against transfer is "plaintiff's forum preference," as NAC opposes the transfer.

The four other private interest factors are neutral. Specifically, "[w]hether the claim arose elsewhere" is neutral because, as discussed *supra*, NAC's claims arose in more than one district, including the Western District of Pennsylvania and, most likely, the Southern District of

---

[9] *See, e.g., Am. Envtl. Servs., Inc. v. Metalworking Lubricants Co.*, 634 F. Supp. 2d 568, 574 (W.D. Pa. 2009) (listing private and public factors); *Conroy v. Pennsylvania Tpk. Comm'n*, No. CIV.A. 10-1234, 2011 WL 578779, at *1 (W.D. Pa. Jan. 19, 2011) (same); *Klingensmith v. Paradise Shops, Inc.*, No. CIV.A. 07-322, 2007 WL 2071677, at *2 (W.D. Pa. July 17, 2007) (same); *Marvell Tech. Grp., Ltd.*, 2009 WL 3055300, at *1.

[10] The Court notes that "the defendant's choice of forum is entitled to 'considerably less' weight than the plaintiff's." *Conroy*, 2011 WL 578779, at *2 (quoting *Penn Mutual Life Insurance Company v. BNC National Bank*, Civil Action No. 10–625, 2010 WL 3489386, at *8 (Sep. 2, 2010)).

13

California, where Eclipse representative took relevant actions on behalf of Eclipse. The next factor, "the convenience as indicated by their relative physical and financial condition," is also neutral because litigating in this district is more convenient for NAC while litigating in the Southern District of California would be more convenient for Eclipse. Thus, the convenience of witnesses factor is neutral because neither party has argued that litigating in either forum would be prohibitively inconvenient for witnesses and this factor applies "only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Robinson v. Home Depot U.S.A., Inc.*, No. 2:14-CV-O1152, 2015 WL 630303, at \*2 (W.D. Pa. Feb. 12, 2015) (Hornak, J.) (quoting *Jumara*, 55 F.3d at 879). The final private interest factor, the "location of books and records," is similarly neutral because neither party has argued that records would only be available in Pennsylvania and this factor is "limited to the extent that the files could not be produced in the alternative forum." *Robinson*, 2015 WL 630303, at \*2 (quoting *Jumara*, 55 F.3d at 879).

## 2.    Public Interest Factors

The Court finds that the first public interest factor, "enforceability of the judgment," is neutral because "neither party has argued, nor does the Court have reason to conclude, that a judgment's enforceability would be in doubt in either forum." *Robinson*, 2015 WL 630303, at \*4.

The second factor, "practical considerations that could make trial easy, expeditious, or inexpensive," and the third factor, "the relatively administrative difficulty in the two fora resulting from court contesting" weigh against transfer; in the year ending on September 30, 2017, the median time from filing to trial for civil cases in this judicial district was 31.5 months,

14

compared to 32.8 months in the Southern District of California. *See* http://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0930.2017.pdf (accessed on 1/29/18.) Accordingly, it would be less expeditious and more administratively burdensome to transfer the case from this district to the Southern District of California.

The fourth factor, "the local interest in deciding local controversies at home" weighs against transfer as this Court has an "interest in deciding the case because it involves alleged injuries sustained by a local Pennsylvania company." *Schwartz T.P. Inc. v. McCarthy*, No. CIV. 14-1014, 2015 WL 1508416, at *15 (W.D. Pa. Mar. 31, 2015).

The fifth factor, "public policies of the fora," is neutral because this Court is not equipped to evaluate the relative public policies of California and Pennsylvania based on the lack of briefing.

The final factor, "familiarity of the trial judge with the applicable state law" is neutral as this Court is not well-versed in Georgia law and has no reason to believe that a district judge in the Southern District of California would be either.

### 3. Conclusion

The Court finds that only one of the twelve private and public interest factors favors transfer to the Southern District of California, while four of the factors weigh against transfer and seven of the factors are neutral. Therefore, the Court holds that Eclipse failed to meet its burden to show that transfer to the Southern District of California would promote the interests of justice.

15

Accordingly, the Court will deny Eclipse's motion to transfer to the Southern District of California.

## C. This Court Will Grant Eclipse's Motion to Transfer to the Northern District of Georgia

### 1. Effect of the Forum Selection Clause

Courts "use federal law when determining the effect of forum selection clauses because '[q]uestions of venue and the enforcement of forum selection clauses are essentially procedural, rather than substantive, in nature.'" *Wall St. Aubrey Golf, LLC v. Aubrey*, 189 F. App'x 82, 84 (3d Cir. 2006) (quoting *Jumara*, 55 F.3d at 877) (internal citations omitted).

"Forum selection clauses can be mandatory or permissive." *Corona Capital*, 221 F. Supp. 3d at 658 (quoting *Campanini v. Studsvik, Inc.*, No. 08–5910, 2009 WL 926975, at *4 (E.D. Pa. Apr. 6, 2009)). "A permissive clause authorizes jurisdiction in a designated forum but does not prohibit litigation elsewhere," whereas "[a] mandatory clause ... dictates an exclusive forum for litigation under the contract." *Dawes v. Publish Am. LLLP*, 563 F. App'x 117, 118 (3d Cir. 2014) (internal citations omitted).

"Courts give less weight to permissive forum selection clauses because these clauses do not exclusively limit the forum." *Corona Capital*, 221 F. Supp. 3d at 658 (*citing Studsvik*, 2009 WL 926975, at *4). Accordingly, district courts in the Third Circuit have declined to extend *Atlantic Marine*'s strong presumption of enforcing forum-selection clauses[11] to instances where the forum-

---

[11] In *Atlantic Marine*, the Supreme Court held that "[t]he presence of a valid forum-selection clause requires district courts to adjust their usual § 1404(a) analysis in three ways," *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 574 (2013): (1) "the plaintiff's choice of forum merits no weight"

16

selection clause is permissive. *Knopick v. UBS AG*, 137 F. Supp. 3d 728, 736 (M.D. Pa. 2015) (stating

that "*Atlantic Marine* applies only when the parties executed a 'mandatory,' and not 'permissive'

forum selection clause.") (citing *Dawes*, 563 F. App'x at 118); *Corona Capital*, 221 F. Supp. 3d at 658

("Because the venue selection clause is permissive, we do not modify the § 1404(a) balancing test

[] under *Atlantic Marine* . . . ."); *Networld Commc'ns, Corp. v. Croatia Airlines, D.D.*, No. CIV.A. 13-

4770 SDW, 2014 WL 4724625, at *3 (D.N.J. Sept. 23, 2014) (declining to apply *Atlantic Marine* to

permissive forum-selection clause).

The forum-selection clause in the Loan Agreement is permissive—it provides for *non-*

*exclusive* venue in the Northern District of Georgia, the Northern District of Alabama, and various

state Courts in Georgia and Alabama. (*See Id*. at § 11.11.) This court will follow the district courts

in the Third Circuit that have declined to apply *Atlantic Marine* to a permissive forum-selection

clause. Accordingly, this Court will analyze Eclipse's motion to transfer under the traditional

private and public interest factors identified by the Third Circuit in *Jumara*.

---

because, "as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that
transfer to the forum for which the parties bargained is unwarranted;" (2) the court "should not consider
arguments about the parties' private interests" because entering into a forum-selection clause waives the
parties' right to challenge the forum they preselected, meaning that the Court may only consider the public-
interest factors when deciding whether to transfer; and (3) "transfer of venue will not carry with it the
original venue's choice-of-law rules." *Atl. Marine*, 134 S. Ct. at 581-82; *see In re: Howmedica Osteonics Corp*,
867 F.3d at 402; *Silvis v. Ambit Energy, L.P.*, 90 F. Supp. 3d 393, 397 (E.D. Pa. 2015); *ADP, LLC v. Bakshi*, No.
CV 15-8385 (CCC), 2016 WL 1223557, at *3 (D.N.J. Mar. 29, 2016); *Harley v. Bank of New York Mellon*, No.
1:15-CV-1384, 2015 WL 6956564, at *2 (M.D. Pa. Nov. 10, 2015). As the Supreme Court noted in *Atlantic
Marine*, because the public "factors will rarely defeat a transfer motion, the practical result is that forum-
selection clauses should control except in unusual cases." *Atl.. Marine*, 134 S. Ct. at 582. However, as
described *supra*, district courts in the Third Circuit have not extended *Atlantic Marine* to permissive forum-
selection clauses. Thus, *Atlantic Marine* does not apply here.

## 2. The *Jumara* Factors Warrant Transfer to the Northern District of Georgia

As a preliminary matter, the Court observes that Eclipse fails to argue that the private and public interest factors favor dismissal. (*See generally* ECF No. 9.) Instead, Eclipse merely asks that this Court transfer the case to the Northern District of Alabama or the Northern District of Georgia pursuant to the Loan Agreement's forum-selection clause. (*Id.* at 9.) But Eclipse fails to recognize that the forum-selection clause is permissive, rather than mandatory. Accordingly, Eclipse mistakenly believes that merely invoking the forum-selection clause will persuade this Court to transfer the case. However, as discussed above, when deciding a motion to transfer based on a permissive forum-selection clause, district courts in the Third Circuit do not follow *Atlantic Marine* but, instead, conduct the analysis of the private and public interest factors as required by *Jumara. See Knopick*, 137 F. Supp. 3d at 736; *Corona Capital*, 221 F. Supp. 3d at 658; *Croatia Airlines*, 2014 WL 4724625, at *3.

In response, NAC argues that transfer is not warranted.[12] NAC argues that this is an "exceptional case" that warrants transfer despite *Atlantic Marine*'s strong presumption in favor of enforcing forum-selection clauses.[13] (ECF No. 11 at 11.) NAC further contends that transferring to the Northern District of Georgia would not promote judicial economy or administrative

---

[12] As a preliminary matter, this Court rejects NAC's argument that the Court must deny Eclipse's motion to transfer venue due to the fact that Eclipse seeks to enforce the forum-selection clause under Fed. R. Civ. P. 12(b)(3) (motion to dismiss for improper venue) rather than a motion to transfer venue under 12 U.S.C. § 1404(a) (*see* ECF No. 11 at 11). While Eclipse failed to cite § 1404(a) in its brief, this Court construes the portion of Eclipse's brief where Eclipse moves for transfer as a motion to transfer under § 1404(a).

[13] Like Eclipse, NAC fails to appreciate that in the case of a permissive forum-clause, courts in the Third Circuit do not apply *Atlantic Marine* but instead conduct the typical transfer analysis using the private and public interest factors announced by the Third Circuit in *Jumara.*

18

resources. (*Id.* at 12.) NAC further avers that transfer is improper because Pennsylvania has a strong interest in this dispute while Georgia does not have any interest at all. (*Id.* at 12-13.) Finally, NAC asserts that transfer is improper given that Eclipse's entire argument for why transfer is proper comprises less than one sentence of its brief. (*Id.* at 13.)

The Court notes that neither party analyzed the full set of private and public interest factors that Courts must consider when deciding motions to transfer venue. In fact, as noted above, Eclipse failed to identify any of the applicable factors. Accordingly, this Court will conduct its own review of the private and public interest factors based on the record before it. As explained below, the Court finds transfer to the Northern District of Georgia is warranted.[14]

### i. Private Interest Factors

The first factor, "the defendant's preference," obviously favors transfer.[15] Conversely, the second factor, "plaintiff's forum preference," weighs against transfer. The third factor, "whether the claim arose elsewhere," is neutral; while, as discussed *supra*, NAC's claims arose in this judicial district (because this is where NAC employees were located during the events giving rise to this dispute), the claims can also be said to have arisen in Georgia, where "representatives of

---

[14] Because the Court exercises its discretion to transfer the case to the Northern District of Georgia, it will not evaluate Eclipse's alternative argument that this Court should transfer to the Northern District of Alabama.

[15] The Court reiterates that "the defendant's choice of forum is entitled to 'considerably less' weight than the plaintiff's." *Conroy*, 2011 WL 578779, at *2 (W.D. Pa. Jan. 19, 2011) (quoting *Penn Mutual*, 2010 WL 3489386, at *8).

19

AloStar" were located when they negotiated the transfer of NAC's interests to Eclipse.[16] The fourth factor," the convenience [of the parties] as indicated by their relative physical and financial condition" is neutral because NAC voluntarily executed the forum-selection clause and ostensibly has the resources to litigate this matter in the Northern District of Georgia.[17] The Court is without sufficient information to evaluate the last two private factors, which the Court construes as neutral.

## ii. Public Interest Factors

While the private interest factors do not clearly weigh towards or against transfer, the Court finds that the public interest factors strongly favor transferring the case to the Northern District of Georgia.

The Court finds that the second public interest factor, "practical considerations that could made trial easy, expeditious, or inexpensive," favors transfer; in the year ending on September 30, 2017, the median time from filing to trial in civil cases was 26.2 months in the Northern District of Georgia, compared to 31.5 months in this district. *See* http://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0930.2017.pdf (accessed 1/29/18.) Accordingly, this case would be more expeditiously resolved in the Northern District of Georgia than it would be in the Western District of Pennsylvania.

---

[16] *See* Declaration of Douglas Holthaus, Esq., ECF No. 9-1 at 1 (affirming that "all relevant conduct by Eclipse was performed by Eclipse representatives in California or New Jersey by email and phone with representatives of Alo[S]tar in Georgia and New York").

[17] The Court assumes that transfer to the Northern District of Georgia would not be prohibitively expensive for Eclipse, as Eclipse is the party moving for a transfer.

The Court further finds that the third public interest factor, "court congestion," weighs in favor of transfer. While the Northern District of Georgia experienced 18.0 "vacant judgeship months" in the year ending on September 30, 2017, this district experienced 48.0 "vacant judgeship months." (*See Id.*) Moreover, as Judge Fischer recently noted, "this Court is presently operating with six judicial vacancies (out of ten seats), three of which have been empty for more than four years." *Polyguard Prod., Inc. v. Innovative Refrigeration Sys., Inc.*, No. CV 17-1230, 2018 WL 398345, at *4 (W.D. Pa. Jan. 12, 2018); *see Iowa Square Realty LLC v. Thota*, No. CV 17-926, 2017 WL 6450899, at *3 (W.D. Pa. Dec. 18, 2017) (noting court congestion in the Western District of Pennsylvania due to several protracted vacancies). By contrast, the Northern District of Georgia has only one current vacancy. *See* http://www.uscourts.gov/judges-judgeships/judicial-vacancies/current-judicial-vacancies (accessed on 1/29/18.) Accordingly, "court congestion" clearly weighs towards transfer.

The Court finds that the sixth public interest factor, "the familiarity of the trial judge with the applicable state law in diversity cases," also supports transfer. The Loan Agreement provides that "[t]his Agreement shall be deemed to have been made in the State of Georgia, and shall be governed by and construed in accordance with internal laws (without regard to conflict of law provisions) of the State of Georgia." (ECF No. 1-2 at § 11.11, p.51.) While this Court admittedly lacks expertise with the state law of Georgia, this Court is confident that the district judges in the Northern District of Georgia are well-versed in Georgia law. Accordingly, this factor strongly supports transfer. *See, e.g., Iowa Square Realty*, 2017 WL 6450899, at *4 (finding that this factor

favors transfer because "the Guarantees provide that they shall be governed by the law of the state of New York."); *Robinson*, 2015 WL 630303, at *5 (finding that this factor favors transfer because "Florida law governs.").

The Court finds that two of the public interest factors are neutral. As noted above, "enforceability of the judgment" is neutral because "neither party has argued, nor does the Court have reason to conclude, that a judgment's enforceability would be in doubt in either forum." *Robinson*, 2015 WL 630303, at *4. The Court also finds that the "public policies of the fora" is neutral; this Court will not attempt to evaluate the comparative public policies of Georgia and Pennsylvania given the minimal briefing before it.

### iii. Conclusion

The Court finds that only one of the public interest factors—"the local interest in deciding local controversies at home"—weighs against transfer. As noted above, NAC is a Pennsylvania corporation with its principal place of business in this judicial district. However, the Court does not find this factor dispositive, particularly given the judicial economy and court congestion considerations, the fact that Georgia law will govern the Loan Agreement, and the presence of the forum-selection clause providing for venue in the Northern District of Georgia.

## VI. Conclusion

The Court will deny Eclipse's Motion to Dismiss under Rule 12(b)(3) because the Court finds that venue is proper in the Western District of Pennsylvania. The Court will deny Eclipse's motion to transfer venue to the Southern District of California. However, the Court will grant

Eclipse's motion to transfer venue to the Northern District of California because the Court finds that transfer is warranted under the *Jumara* factors. Because the Court will transfer the case to the Northern District of Georgia, the Court will not address Eclipse's remaining motions.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NORTH AMERICAN COMMUNICATIONS, INC., et al, | ) ) ) | CIVIL ACTION NO. 3:17-167 |
| Plaintiffs, | ) ) ) | JUDGE KIM R. GIBSON |
| v. | ) ) | |
| ECLIPSE ACQUI INC., | ) ) ) | |
| Defendant. | ) | |

## ORDER

NOW, this __31st__ day of January, 2018, upon consideration of Eclipse's Motion to Dismiss under Rule 12(b)(3), which the Court also construes as a motion to transfer venue, and for the reasons set forth in the accompanying Memorandum Opinion, it is **HEREBY ORDERED AS FOLLOWS:**

1. The Court will **GRANT in PART, and DENY in PART**, Eclipse's motion (ECF No. 8.)

2. Specifically, the Court will **DENY** Eclipse's Motion to Dismiss under Rule 12(b)(3).

3. However, the Court will **GRANT** Eclipse's motion to transfer venue to the Northern District of Georgia. Accordingly, this action at Docket No. 3:17-cv-167 is **HEREBY TRANSFERRED** to the Northern District of Georgia.

4. The Clerk is directed to transfer this action to the Northern District of Georgia.

BY THE COURT:

KIM R. GIBSON
UNITED STATES DISTRICT JUDGE